### COLUMBIA FIRE INSURANCE COMPANY, Plaintiff, v. TRACY, Defendant.

Common Pleas Court, Franklin County.

No. 185071. Decided August 15, 1953.

Landis, Ferguson, Bieser & Greer, Dayton, for plaintiff.
Hon. C. William O'Neill, Atty. Genl., Ralph Klapp, Asst. Atty. Genl., Columbus, for defendant.

### OPINION

By REYNOLDS, J.

This case is before the Court on defendant's demurrer to plaintiff's amended petition, predicated on the ground that the pleading does not state facts which show a cause of action.

Plaintiff was a domestic fire insurance company, incorporated under the laws of Ohio in 1881. The amended petition states that within 60 days after January 1, 1951, plaintiff filed with the Superintendent of Insurance of Ohio, the regular annual statement of plaintiff's condition as of December 31, 1950, as required by §9590 GC, and that there-

after the Superintendent of Insurance determined and certified to the State Auditor the amount of the franchise tax as provided in §5415-12 GC; that thereafter the State Auditor charged the same for collection and certified said amount to the State Treasurer for collection; that thereafter the Treasurer rendered a bill to plaintiff which bore the following:

"1951 Tax Bill—Franchise Tax on Domestic Insurance Companies."

This bill in the sum of $8384.56 was promptly paid by plaintiff and it also paid the fire marshal tax in the amount of $1426.64 based on its annual statement as provided in §841 GC.

In September, 1951, plaintiff entered into a supplemental reinsurance agreement with The American Insurance Company of Newark, New Jersey, plaintiff parent Company by the terms of which that company assumed all liability of plaintiff by reason of the policies it had issued, and such liabilities became the direct obligations of the parent Company.

The Superintendent of Insurance by letter dated October 5, 1951, pursuant to the provisions of §9555 GC approved said agreement between plaintiff and the parent Company.

In September, 1951, plaintiff notified the Superintendent of Insurance of the plans to dissolve and liquidate plaintiff corporation and distribute the assets to the parent Company. The pleading states that there was no objection to this program but there was a question as to plaintiff's liability for additional taxes.

It is further alleged that the necessary corporate action looking to dissolution was taken by plaintiff and on December 10, 1951, plaintiff tendered to the Secretary of State its certificate of dissolution together with the other papers as required by §8623-80 and §8623-80a GC. The Superintendent refused to accept same without clearance from the Superintendent of Insurance. This plaintiff requested but the Superintendent of Insurance refused to issue same and demanded from plaintiff a statement as to assets, liabilities and premiums on insurance written in 1951, for the purpose of determining the franchise tax for 1951. This plaintiff furnished under protest and the superintendent computed such tax in the amount of $7527.57 and certified same for collection. This amount was paid by plaintiff on December 10, 1951, under protest in order to secure the clearance of Superintendent of Insurance so that the dissolution could be consummated. At the same time plaintiff notified the State Treasurer that it would file suit to recover the amount so paid.

Suit was duly filed on August 5, 1952, based on the claim that the franchise tax so levied and paid was an illegal tax, and therefore should be recovered.

The question raised by the demurrer is therefore one to be determined by the statutory provisions governing domestic insurance companies.

Plaintiff, of course, predicates its claim that the $8384.56 paid by it in May of 1951 was the franchise tax for the privilege of doing business in 1951 while defendant insists that this was the franchise tax for the privilege of doing business in 1950.

Sec. 5414-9 GC provides as follows:

"An annual franchise tax on the privilege of being an insurance company as defined in §1414-8 GC is hereby levied, measured by (a) the

capital and surplus of a domestic insurance company having capital divided into shares or the surplus of a domestic insurance company not having capital divided into shares, at the value thereof as reported by the company in its annual statement for the preceding year filed with and approved by the superintendent of insurance setting forth the admitted and non-admitted assets and the liabilities of the company, including in such liabilities (1) The reserve and unearned premium liabilities computed as provided by law, the same being the amount of debts of an insurance company by reason of its outstanding policies in gross, (2) amounts set apart for the payment of dividends to policy holders, and all actual liabilities set forth in the annual statement; or (b) eight and one-third times the gross amount of premiums received by any such domestic insurance company from policies covering risks within this state during the preceding calendar year after making the deductions prescribed by §5433 GC in the case of foreign companies, which ever basis of measurement shall, in the case of any domestic insurance company, be the smaller. The objects of such tax are those declared in §5415-16 GC to which only the same shall be applied."

This statute became effective on July 18, 1933.

Under the provisions of §5415-9 GC as enacted in 1931 domestic insurance companies were taxed as follows:

"Sec. 5414-9 GC. The capital and surplus of a domestic insurance company having capital divided into shares and the surplus of a domestic insurance company not having capital divided into shares shall be listed and assessed in the name of and against the company in the county where its actual principal place of business is located at the value thereof as reported by the company in its annual statement for the preceding year filed with and approved by the superintendent of insurance setting forth the admitted assets and the liabilities of the company, including in such liabilities (1) the reserve and unearned premium liabilities computed as provided by law, the same being the amount of debts of an insurance company by reason of its outstanding policies in gross, (2) amounts set apart for the payment of dividends to policy holders, and all actual liabilities set forth in the annual statement."

This was amended in 1933 as heretofore set out.

Therefore, in 1933 a domestic insurance company paid a tax for that year based on its statement for the preceding year and it was the tax for 1933 and not for 1932.

Now supposing that the facts alleged in plaintiff's amended petition had happened in 1934 instead of 1951. Would there be any question but that the tax levied in 1934 on the basis of the company's 1933 statement was a franchise tax for the privilege of doing business in 1934? We think the answer is obvious,—that is, that the tax in 1934 based on the 1933 statement was a tax for 1934. To conclude otherwise would amount to a double taxation, the company having already paid the tax for 1933.

It follows then that the tax levied and paid in 1951 based on the plaintiff's statement for the year 1950 was a franchise tax for the year 1951 and not for the year 1950.

The Court therefore concludes that plaintiff's amended petition does state facts sufficient to show a cause of action and the demurrer of defendant is accordingly overruled.